IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL R. BLACK | : | |
| and | : | |
| CARYN BLACK, | : | CIVIL ACTION |
| | : | NOS. 14-2733 & 14-2734 |
| Appellants, | : | |
| v. | : | |
| | : | BANKRUPTCY CASE |
| RONALD D GIGLIOTTI | : | NOS. 11-18910 & 12-11986 |
| and CHRISTOPHER J GIGLIOTTI | : | |
| GROUP CORP., & THE PAUL REVERE | : | ADVERSARY NOS. |
| INSURANCE CO. | : | 12-0449 & 12-0471 |
| Appellees | : | |

**MEMORANDUM**

**J. Baylson**        **August 6, 2014**

     Plaintiffs appeal from the Bankruptcy Court of Eastern Pennsylvania's order granting Defendants summary judgment on their claims of piercing the corporate veil and nondischargeability of debt.

**I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY**

     In 2003 Plaintiffs Daniel Black and Caryn Black signed an agreement of sale to purchase a home from a residential construction company, Gigliotti Avignon Associates, L.L.P. (Gigliotti Avignon), owned by three brothers, Defendant Ronald Gigliotti, Defendant John Gigliotti, and Christopher Gigiliotti. Plaintiffs paid a $102,810 deposit to Gigliotti Avignon in June 2003. But after construction began, Plaintiffs decided to divorce and no longer wanted the home. Gigliotti Avignon orally agreed to modify the contract and agreed to return Plaintiff's deposit if they were able to sell the home at a profit.

     On December 2, 2004, counsel for Gigliotti Avignon sent notice to Plaintiffs that they were in breach of the agreement by failing to purchase the property and that Gigliotti Avignon

1

were retaining their deposit pursuant to the terms of the agreement.[1] On December 14, Gigliotti Avignon sold the home for $123,000 more than Plaintiffs had originally agreed to pay them.

In December 2005, Plaintiffs filed suit against Giogliotti Avignon for specific performance, breach of contract, fraud, and breach of the Pennsylvania Unfair Trade Practices & Consumer Protection Law. After a prolonged litigation, Plaintiffs were awarded $151,2756.62 in a bench trial in October 2010. Approximately three months later, Defendants notified Plaintiffs that Gigliotti Avignion was insolvent and could not pay the judgment.

Defendants John Gigliotti, and Ronald Gigliotti filed for Chapter 7 bankruptcy in November 2011. Bankruptcy Nos. 11–18910 & 12–11986. Plaintiffs filed an adversary complaint in John and Ronald Gigliotti's bankruptcies to pierce the corporate veil and asserted a number of state law tort and statutory claims against Defendants. Adversary Nos. 12–0449 & 12–0471. Defendants moved to dismiss the compliant based on the statute of limitations. The Bankruptcy Court granted Defendants' motion to dismiss, finding Plaintiffs had notice of their state law claims at the time they filed their lawsuit in 2005. Plaintiffs were granted leave to amend their complaint to allege only claims for piercing the corporate veil and nondischargeability of debt under 11 U.S.C. §§523(a)(2) and (a)(4).

In their amended complaint, Plaintiffs brought claims to pierce the corporate veil, nondischargeability of debt for defalcation, and nondischargeability of debt for fraudulent misrepresentation.

---

[1] Attorneys for Gigliotti Avignion (Archer & Griener) sent a letter to the Plaintiffs stating, in relevant portion, "You have not made any of the selections under the time frames required under the referenced Agreement nor otherwise performed your obligations thereunder. This letter shall constitute notice pursuant to subparagraph (v) under the "Default" paragraph of the Agreement pursuant to which you shall have 10 days to make your selections or otherwise cure your default of performance under the Agreement. Pursuant to the Agreement, in the event of a default, Gigliotti is entitled to retain the Deposit. . . ." In re Gigliotti, 507 B.R. 826, 831n.6 (Bankr. E.D. Pa. 2014).

Defendants subsequently moved for summary judgment, and Plaintiffs cross-moved for summary judgment. Three months after Plaintiffs moved for summary judgment, and after the Bankruptcy Court heard oral argument on the cross motions, Plaintiffs filed a motion to compel production of all financial records tracing the funds Plaintiffs deposited, all financial records of Gigliotti Avignon from 2003 to 2011, and all documents showing Gigliotti Avignon set aside sufficient funds to satisfy liabilities to Plaintiffs as of December 2, 2004. Pl's Motion to Compel at 7-8.

The Bankruptcy Court denied the motion to compel for three reasons. First, the motion was filed four months after the discovery deadline and was untimely. Second, Plaintiffs did not articulate any reason why they failed to raise objections to the discovery responses at the time the inadequate responses were produced. Third, Plaintiffs moved for summary judgment on August 23, 2013, but did not move to compel production until November 22, 2013..

The Bankruptcy Court held Plaintiffs failed to meet the standard for piercing the corporate veil because there was no evidence Gigliotti Avignon was under-capitalized, or that Defendants siphoned any corporate funds or impermissibly comingled company assets.[2] In re Gigliotti, 507 B.R. 826, 836 (Bankr. E.D. Pa. 2014). The Bankruptcy Court further held that Plaintiffs could not bring claims under the participation theory that Defendants participated in the torts committed against them because those claims were not alleged in the complaint, Plaintiffs presented no evidence of tortious conduct, and their claims for the underlying torts were previously dismissed as untimely. Id. at 837-38. Finally, the Bankruptcy Court held

---

[2] The Bankruptcy Court rejected Plaintiff's arguments that the doctrines of res judicata and res ipsa loquitur supported their claims to pierce the corporate veil. The Court found that res judicata only applied to the corporate defendant who was the only defendant in the 2005 state law suit, and that res judicata had consistently been rejected in claims to pierce the corporate veil. The Court also rejected Plaintiffs' claims that they could show embezzlement or siphoning of funds through the doctrine of res ipsa loquitur because that is a theory of circumstantial evidence in negligence claims, not intentional torts.

because the Plaintiffs did not have sufficient evidence to pierce the corporate veil, they could not show nondischargeabilty of debt because the debt was only attributable to the corporate entity and not owed by the debtors themselves. Id. at 840. The Bankruptcy Court denied Plaintiffs' motion for summary judgment and granted Defendants' motion for summary judgment, from which Plaintiffs appeal. Id.

## II. THE ISSUES ON APPEAL AND THE PARTIES' ARGUMENTS

1. Plaintiffs argue the Bankruptcy Court erred by denying their claim to pierce the corporate veil because it applied the wrong test to determine whether Defendants created the corporate entity as a sham to evade personal liability. Plaintiffs contend that their evidence showed Defendants siphoned their deposit funds because the money was removed from the escrow account and Defendants had exclusive control over Gigliotti Avignon. Plaintiffs argue that they presented sufficient circumstantial evidence under the doctrine of res ipsa loquitur because Defendants had exclusive control over the corporation that was the instrumentality of their injury. Defendants respond that the Bankruptcy Court properly applied the Third Circuit standard for piercing the corporate veil.

2. Plaintiffs contend the Bankruptcy Court erred in denying their claims under the participation theory because they produced evidence that their deposit was withdrawn from the escrow account, and that Defendants were the officers of Gigliotti Avignon. Defendants respond that the Bankruptcy Court applied the standard articulated by the Pennsylvania Supreme Court when "the record establishes the individual's participation in in the tortious activity" and Plaintiffs did not produce any evidence of tortious activity.

3. Plaintiffs challenge that the Bankruptcy Court erred in denying their motion to compel production of financial records. Defendants respond that the Bankruptcy Court correctly denied

the motion based on its filing beyond the discovery deadline and after Plaintiffs had moved for summary judgment.

### III. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over appeals from final judgments, orders and decrees of the Bankruptcy Courts under 28 U.S.C. § 158(a)(1).  This appeal is from an order granting summary judgment to Defendants, and is a final order.

This Court reviews "the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof."  In re Trans World Airlines, Inc., 145 F.3d 124, 131 (3d Cir. 1998).

### IV. ANALYSIS

**A. Piercing the Corporate Veil**

"The 'classical' piercing of the corporate veil is an equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation."  In re Blatstein, 192 F.3d 88, 100 (3d Cir. 1999) (citation omitted); see also Ashley v. Ashley, 393 A.2d 637, 641 (Pa. 1978) ("[W]henever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests, the fiction of the separate corporate identity may properly be disregarded.").  "This legal fiction of a separate corporate entity was designed to serve convenience and justice, and will be disregarded whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless."  Ashley, 393 A.2d at 641 (internal citations omitted).  There is a strong presumption against piercing the corporate veil in Pennsylvania, and it is only to be granted in limited circumstances.  Zubik v. Zubik, 384 F.2d 267, 273 (3d Cir. 1967) ("[A]ny court must

start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception.").

The Third Circuit looks to the following factors to determine whether a corporate entity is merely an alter ego of the controlling shareholder: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." Pearson v. Component Tech. Corp., 247 F.3d 471, 484-85 (3d Cir. 2001). "The test, . . . is demonstrably an inquiry into whether the debtor corporation is little more than a legal fiction. Such a burden is notoriously difficult for plaintiffs to meet." Id. at 485 ("For instance, courts have refused to pierce the veil even when subsidiary corporations use the trade name of the parent, accept administrative support from the parent, and have a significant economic relationship with the parent.").

Plaintiffs contend the Bankruptcy Court erred in adopting this multi-factor test articulated in Pearson and many other Third Circuit cases. See, e.g., Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188, 195 (3d Cir. 2003); Ragan v. Tri-Cnty. Excavating, Inc., 62 F.3d 501, 509 (3d Cir. 1995); and Zubik, 384 F.2d at 274. Plaintiffs point to a two-part test articulated in Craig v. Lake Asbestos of Quebec, Ltd., where "(1) the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent and (2) the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law." 843 F.2d 145, 149 (3d Cir. 1988). But in Craig the Third Circuit went on to consider the same factors articulated in Person to determine whether the parent company dominated the subsidiary to the

extent that it was merely an alter ego.  Id.  Plaintiffs have not cited to any case that questions or contradicts the standard applied by the Bankruptcy Court.

Plaintiffs have failed to point to any evidence on the record showing Gigolitti Avignon was a sham enterprise or that defendants abused the corporate form.  Plaintiffs correctly note that Defendants bear the burden of proof on summary judgment to show the undisputed facts entitle them to judgment as a matter of law.  But Plaintiffs bear the burden to produce some evidence sufficient to show a genuine dispute of facts supporting their claim to pierce the corporate veil.  Plaintiffs assert Defendants used their corporate entity to steal Plaintiffs' deposit, but Plaintiffs have not produced any evidence suggesting that Defendants withdrew the funds for personal use or comingled company assets with personal funds.  Cf.  Lutyk, 332 F.3d (affirming a judgment after a non-jury trial to pierce the corporate veil where the company's president "abused the corporate form" by siphoning funds when the company president knew the company was grossly insolvent, increasing payments to himself and family members, while failing to pay non-family employees, "present[ing] an element of injustice or fundamental unfairness").

Instead, Plaintiffs argue the doctrine of res ipsa loquitur supports their claim.  First, this doctrine only applies to negligence claims, not to Plaintiff's claims for intentional torts.  Gilbert v. Korvette, Inc., 327 A.2d 94, 99 (Pa. 1974) (holding res ipsa loquitur "is only a shorthand expression for circumstantial proof of negligence").  Second, Plaintiffs have not pointed to any evidence contradicting the Bankruptcy Court's findings that the escrow account records were "entirely consistent with a normally functioning corporation."  In re Gigliotti, 507 B.R. at 835.  Accordingly, the Bankruptcy Court did not err in finding Plaintiffs failed to produce evidence to support their claim to pierce the corporate veil.

**B. Nondischargeability of Debt**

To show a debt is nondischargable under 11 U.S.C. §523(a), a plaintiff must show that a valid debt exists, and that the debt meets the requirements of the enumerated exceptions to dischargability. In re Pearl, 502 B.R. 429, 442 (Bankr. E.D. Pa. 2013). "In the absence of an enforceable obligation, there is no "debt" that can be non-dischargeable." In re August, 448 B.R. 331, 346 (Bankr. E.D. Pa. 2011). To establish a valid debt, the plaintiff must show he "hold[s] an enforceable obligation under non-bankruptcy law." Id.

Here, Plaintiffs' obligation was against Gigliotti Avignon. Plaintiffs' contract was between themselves and Gigliotti Avignon. The state court judgment was only against Gigliotti Avignon, not either of the Defendants. Without first piercing the corporate veil, the debt Plaintiffs assert cannot be attributed to Defendants. Thus, the Bankruptcy Court correctly held that Plaintiffs must first show that the debt is attributable to Defendants by piercing the corporate veil in order to assert nondischargeability of the debt against them.

**C. Participation Doctrine**

Plaintiffs contend the Bankruptcy Court erred in rejecting their claims against Defendants based on the Pennsylvania participation doctrine. Plaintiffs contend the statute of limitations should be tolled under the discovery doctrine until January 11, 2011 when they received notice that Gigliotti Avignon was insolvent. Plaintiffs assert it was only from this letter that they could infer "their monies had been improperly removed from escrow by the Gigliottis and spent." Pl's Br. at 31.

Under Pennsylvania law adopting the participation theory, a corporate officer "who takes part in the commission of a tort by the corporation is personally liable therefor; but [] an officer of a corporation who takes no part in the commission of the tort committed by the corporation is

8

not personally liable to third persons for such a tort . . . ." Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983) (internal citations omitted). "Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts." Id.

As discussed above, Plaintiffs have not produced any evidence that either of the Defendants engaged in tortious conduct. There is no evidence on the record showing who was authorized to sign checks for Gigilotti Avignon. Plaintiffs have not even alleged which of the three Gigliotti brothers withdrew the deposit. Notably, only two of the three brothers are defendants in this bankruptcy action. At the summary judgment stage, Plaintiffs must come forward with some evidence that either or both of the Defendants personally participated in the conversion their funds. The Bankruptcy Court is not required to infer that because the money was withdrawn, Defendants personally participated in a theft.

**D. Motion to Compel**

Plaintiffs contend the Bankruptcy Court should have granted their motion to compel production of evidence. First, this issue is not on direct appeal, as Plaintiffs appeal from the order granting Defendants' motion for summary judgment, and denying their motion for summary judgment. Second, Plaintiffs have not pointed to any case law suggesting the Bankruptcy Court's ruling was in error, or abused its discretion.

Numerous courts have denied motions to compel for the same three reasons articulated here: the motion was filed long after the discovery deadline passed, no excuse was given for failing to file the motion earlier, and the movant filed for summary judgment before it sought to compel production. See, e.g., Pathmark Stores, Inc. v. Gator Monument Partners, LLP, No. 08-3082, 2009 WL 2762836, at *2 (E.D. Pa. Aug. 26, 2009); Celgene Corp. v. Centocor, Inc., No. 03-5978, 2006 WL 305431, at *3 (E.D. Pa. Feb. 8, 2006). As Judge Pratter of this Court

explained, "the filing of a motion for summary judgment is a clear indication that the moving party considered the discovery record both adequate and closed." Pathmark Stores, Inc., 2009 WL 2762837, at *2.

The Bankruptcy Court's opinion was supported by precedent and well-reasoned.  It is incongruous for Plaintiffs to move for summary judgment and then three months later argue they have not received adequate discovery to produce evidence in support of their claims.  Finally, Plaintiff has pointed to no caselaw to the contrary.  Accordingly, this Court finds no error or abuse of discretion in the Bankruptcy Court's ruling.

### IV.   CONCLUSION

The Bankruptcy Court properly found Plaintiffs failed to produce evidence supporting their claim to pierce the corporate veil or supporting liability against Defendants based on the participation theory.  The Bankruptcy Court's order will be affirmed.

O:\CIVIL 14\14-2733 in re ronald gigliotti\14cv2733.appeal.memo.docx